COVINGTON, Judge.
The appellant, Leslie Daeda, challenges her judgment and sentence for tampering with or fabricating physical evidence. On appeal she alleges that the trial court erred by not allowing her to impeach a crucial State witness. Because we agree, we reverse and remand for a new trial.
Around March 1998, the Cape Coral police department investigated an individual named Katherine Smith on charges of burglary and grand theft of certain items claimed to be the property of the Daeda family. Ms. Daeda provided the prosecutor assigned to the Smith case with a document entitled “Gentlemans Agreement and Promissory Note.” This was an important piece of evidence because it provided written corroboration of some of the accusations made against Ms. Smith. According to Ms. Daeda, the contents of the agreement had been dictated by Ms. Smith and typed by Ms. Daeda. Ms. Daeda told investigators that she had witnessed Ms. Smith sign the agreement in the presence of notary Richard Singleton.
The prosecutor assigned to the Smith investigation, Nicholas Thompson, testified that when he first received the copy of the agreement he noticed that the signature of Ms. Smith “looked odd” and so he presented it to the office’s investigator for his review. Likewise, Investigator Ed Boone had some questions concerning Ms. Smith’s signature.
Mr. Boone contacted Mr. Singleton. Initially, Mr. Singleton stated that he had indeed witnessed Ms. Smith’s signature. After Mr. Singleton was asked to travel to the downtown office of the State Attorney and advised that “perjury [was] a crime,” Mr. Singleton changed his story. He told investigators and testified at trial that he did not witness Ms. Smith’s signature on the agreement. Rather, Ms. Daeda, whom he knew, asked him to do her a favor and notarize the document for her. Ms. Smith’s purported signature was already on the document when Mr. Singleton notarized it. After further investigation, Ms. Daeda was charged with tampering with or fabricating physical evidence.
As part of its case in chief, the State called Ms. Smith as a witness. In her testimony Ms. Smith denied signing the agreement or dictating the contents of the agreement to Ms. Daeda. Ms. Smith said that the first time she saw the document was in October 1998 when her lawyer showed it to her. During cross-examination, Ms. Smith was asked about a particular conversation that she had had in February 1998 with Ms. Daeda in the presence of Richard Daeda, Leslie’s brother. Although Ms. Smith admitted that such a conversation took place, she denied that there was any mention of the agreement during that conversation.
Richard Daeda was called as a witness for the defense. The focus of Mr. Daeda’s direct examination was the conversation discussed above. In particular, Mr. Daeda was asked about comments made by Ms. Smith during her discussion with Ms. Dae-da. The trial court allowed Mr. Daeda to testify as to a number of matters — including the fact that he was a witness to the discussion between his sister and Ms. Smith.
However, the following colloquy transpired:
[By the Defense Attorney, Mr. Coleman]
Q. Did Ms. Smith admit that she had signed an agreement?
A. Yes.
[By the Prosecutor,] MR. DORAN: Objection; hearsay.
THE COURT: Sustained.
*635 MR. COLEMAN: Could I please—
THE COURT: I made my ruling.
BY MR. COLEMAN:
Q. Did Ms. Smith admit that she had signed a document?
A. Yes.
MR. DORAN: Objection; hearsay.
THE COURT: Sustained. I will instruct the jury to disregard that.
The defense argued that Mr. Daeda’s testimony was not being offered for the truth of the matter asserted, but rather that it was being offered to impeach Ms. Smith’s testimony and thus should be admitted. Defense counsel then sought permission to proffer some additional testimony by Mr. Daeda. During the proffer, the following significant questions were asked:
Q. What was the discussion with regard to the subject of money owed to your sister?
A.... Kathy Smith stated that Leslie didn’t need the money; and ... “I’m on Prozac, under duress, and that agreement will not hold up in a court of law.”
[[Image here]]
Q. Then there was some discussion about not honoring the agreement?
A. Yes.
Likewise, the trial court found that this testimony was hearsay and not relevant to the matter. Accordingly, the proffered testimony was not permitted to be submitted to the jury. It is these rulings that are being challenged on appeal.
A party may attack the credibility of a witness by introducing statements of that witness that are inconsistent with her present testimony. § 90.608(1), Fla. Stat. (1997). As we recognized in Williams v. State, 472 So.2d 1350, 1352 (Fla. 2d DCA 1985), “The prior inconsistent statement may be oral and unsworn and may be drawn out on cross-examination of the witness himself and, if on cross-examination the witness denies, or fails to remember, making such a statement, the fact that the statement was made may be proved by another witness.” (Citations omitted.)
Because Ms. Smith denied that there was any mention of the agreement, her trial testimony is inconsistent with Mr. Daeda’s version of the conversation.
In resolving whether it was error for the trial court not to have permitted Mr. Daeda’s testimony, we must first decide whether Ms. Smith was being questioned on a collateral or irrelevant matter. “It is well established that if a witness is. cross-examined concerning a collateral or irrelevant matter, the cross-examiner must ‘take’ the answer, is bound by it, and may not subsequently impeach the witness by introducing extrinsic evidence to contradict the witness on that point.” Caruso v. State, 645 So.2d 389, 394 (Fla.1994). See also Arrington v. State, 700 So.2d 777, 778 (Fla. 2d DCA 1997) (stating that it is error to permit the State to call a witness to contradict collateral answers given dining the State’s cross-examination of another witness).
In Lawson v. State, 651 So.2d 713 (Fla. 2d DCA 1995), this court set forth the standards to be followed by courts in determining whether a matter is collateral or irrelevant.
The test is whether the proposed testimony can be admitted into evidence for any purpose independent of the contradictions. Two types of evidence pass this test: (1) facts relevant to a particular issue; and (2) facts which discredit a witness by pointing out the witness’ bias, corruption, or lack of competency.
Id. at 715 (citations and internal quotations omitted).
*636 Because Ms. Smith’s purported admission that she signed the agreement “is relevant to independently prove material fact or issue,” Lawson, 651 So.2d at 714, Mr. Daeda’s testimony should have been allowed. We disagree with the State’s contention that the testimony was not relevant to the issue in the case at bar. Whether Ms. Smith signed the agreement goes to the heart of the charges filed against Ms. Daeda. Thus, it was error for the trial court not to have permitted Mr. Daeda to testify concerning Ms. Smith’s purportedly inconsistent statements.
We cannot agree with the State’s contention that this was harmless error. As we discussed above, the issue of whether Ms. Smith signed the agreement formed the essence of the charges against Ms. Daeda. The State has not met its burden of proving beyond a reasonable doubt that the error did not contribute to the verdict or to the conviction. State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986).
For these reasons, we reverse and remand for a new trial.
Reversed and remanded.
NORTHCUTT and SALCINES, JJ., Concur.